# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BAAL LAND CORPORATION, ET AL.** | : | **DOCKET NO. 05-0382** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **JOSHUA TIMBERLANDS, L.L.C.** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the undersigned are five motions: three motions to remand [doc. #s 33, 41, & 59] and two motions for leave to amend the complaint [doc. #s 31 & 46]. All five motions were filed by plaintiffs. One motion to remand [doc. # 59] seeks remand due to the resulting loss of diversity in the event that either or both of the motions for leave to amend is granted. Another motion [doc. # 41] seeks remand due to removing defendant's alleged failure to establish the citizenship of its members.[1] The third motion [doc. # 33] seeks remand due to the alleged lack of complete diversity between the original parties to the suit. We need proceed no further than the last-enumerated motion.

### Background

On January 27, 2005, Baal Land Corporation and Baal Minerals, Inc. (incorrectly named, Baal Minerals Corporation) filed the above-captioned suit in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana. The sole defendant was Joshua Timberlands, L.L.C. The petition seeks stipulated damages for Joshua's alleged failure to annually acknowledge mineral interests in favor of Baal Minerals on land that Joshua now

---

[1] For purposes of diversity, the citizenship of an L.L.C. is determined by its members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.,* 357 F.3d 827, 829 (8th Cir. 2004).

owns and that was formerly owned by Baal Land.[2]

On March 2, 2005, Joshua removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal, ¶ 13). The Notice stated that Joshua is a Mississippi corporation, with its principal place of business in Mississippi. *Id.* at ¶ 8. It further alleged that plaintiffs are "citizens of the state of Louisiana." (Notice of Removal, ¶ 9).

On November 4, 2005, Joshua sought leave of court to file an Amended Notice of Removal to clarify with requisite specificity the citizenship of the parties. Leave was granted, and the Amended Notice was filed on November 8, 2005. (November 8, 2005, Order). The Amended Notice alleges that plaintiffs are Delaware corporations, with their principal places of business in Louisiana. (Amend. Notice of Removal, ¶ 9). Moreover, Joshua's members are identified as 1) Joshua Holdings, L.L.C., whose sole member is Bernard J. Ebbers – a citizen of Mississippi; 2) Molpus Timberlands Management, L.L.C., whose members are Richard H. Molpus, Jr., Nancy M. Pate, Dorothy M. Howorth, and Melanie M. Myers, -- citizens of Mississippi, North Carolina, Mississippi, and Texas, respectively; and 3) the Travelers Insurance Company, a Connecticut corporation, with its principal place of business in Connecticut. *Id.* at ¶ 8.

Concurrent with the filing of the proposed amended notice, plaintiffs filed the instant motion to remand alleging that they are in fact Texas citizens because their principal place of business is in Texas. Accordingly, plaintiffs contend that diversity is lacking and remand

---

[2] Baal Land sold the property to Griffin Logging, Inc. on April 25, 1998. (Petition, ¶ 4). On or about the next day, Griffin sold the land to Strategic Timber Partners, LP. (*See*, Petition, ¶ 5). Subsequently, Strategic sold the land to Joshua on January 4, 2000. *Id.* at ¶ 6. In each of the sales, the purchaser was required to annually acknowledge the reservation of mineral interests in favor of Baal Minerals. *Id.* at ¶¶ 7-8.

is required.³ Defendant disagrees and argues that plaintiffs' principal place of business is in Louisiana. Following a delay for voluminous document production and extensive, often repetitive briefing, the matter is now before the court.⁴

Law

In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). A corporation is deemed to be a citizen of both the state of its incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c). In determining a corporation's principal place of business, the Fifth Circuit applies the "total activity" test. *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 404 (5th Cir. 1987)("*Olson*"). In turn, the "total activity" test is comprised of two sub-tests: the "nerve center" test and the "place of activity" test. *Id.* Reduced to their simplest terms, the "nerve center" is where the corporation has its "brain"; and the "place of activity" is where the corporation carries out its operations. *Olson*, 818 F.2d at 405.

Depending on the corporation, one component of the "total activity" test will predominate over the other:

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business, (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant, but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance."

*Olson*, 818 F.2d at 411, (citations omitted).

---

³ Indeed, if either plaintiff is found to be a citizen of Texas, then remand is required.

⁴ The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

The following non-exhaustive considerations are relevant in evaluating the "activity" of a corporation:

> whether the nature of the business is active or passive, labor-intensive or management-demanding; the number of locations in which a corporation carries on its business; the importance of the activity in question to the corporation as a whole; and the extent of local contacts the corporation has with the community, including "the number of employees in the given locale and the extent to which the corporation participates in the community through purchase of products, supplies and services, sales of finished goods, and membership in local trade or other organizations." *Id.* at 411-12.

*Muirfield (Delaware), L.P. v. Pitts, Inc.*, 17 F.Supp.2d 600, 604 (W.D. La. 1998)(citing *Olsen, supra*).

When assessing the corporation's "nerve center," we should consider "the exclusivity of decision making of the nerve center and the degree of autonomy delegated to other locations." *Id.* Moreover, "nerve-center considerations take on added significance when the activities of the corporation are far-flung or passive or management-oriented as opposed to labor intensive activities." *Id.*

As the party invoking the court's jurisdiction, the removing defendant bears the burden of establishing federal subject matter jurisdiction. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

## Analysis

Baal Land and Baal Minerals were both incorporated on July 14, 1992, in Delaware. (Baals' Reply Memo., Exh. 1A to Brewer Affidavit). Their registered agent for service of process in Delaware was the Yacht Registry LTD. *Id.* The mailing addresses on the certificates of incorporation list a Houston post office box. *Id.* Baal Land and Baal Minerals were formed to receive the property and mineral interests inherited by Katherine Brewer

4

from her grandmother's side of the family. (*See*, 30(b)(6) Depo. of Baal Minerals and Baal Land, pgs. 44, 98)(hereinafter, "Depo."). Baal Minerals owns a 1/9 minerals interest in 45,000 acres of land – all situated in Louisiana. *Id.* at pgs. 39-40,44, 60-61. Baal Minerals' revenues primarily derive from oil, gas, and liquid production from the Louisiana properties. *Id.* at pgs. 61-62. Baal Minerals' remaining revenue primarily stems from interest income. *Id.* From 2000-2004, Baal Minerals' annual royalty income was been between $ 3,000-6,000. (*See*, Opp. to Baal's Suppl. Memo., Exhs. 12-18).

Prior to 1998, Baal Land's revenue source was the sale of timber. (*See*, 30(b)(6) Depo. of Baal Minerals and Baal Land, pg. 121). Baal land currently owns a 1/9 undivided interest in 2,600 acres of land that is involved in litigation. *Id.* at pgs. 117-122. Contrary to Baal's 30(b)(6) deposition, Baal Land's most recent federal tax return reveals total assets of $99,367, and that most of the year's income derived from rental property exclusively in Louisiana. (Opp. Memo., Exh. 11). However, it is uncontroverted that after 1998, Baal Land was involved in little or no land management. (Depo., pg. 121).

From at least 1998 until 2002, the Baal entities' federal tax returns were prepared by a C.P.A. in Spring, Texas. *Id.* Exhs. 5-18. From at least 1998 through 2004, the Baal entities listed a Houston, Texas address on their federal tax returns. *Id.* Likewise, from at least 1995 through 2005, the Baal entities provided a Houston address on their Louisiana income and franchise tax forms. Exhs. 22-32; Pl. Reply Memo., Exh. 10A.[5] Of course, the return address listed on a corporation's income tax forms is significant. *Toms v. Country*

---

[5] However, Baal Minerals identified Lake Charles, Louisiana as its principal place of business on its Louisiana tax return. *Id.*

*Quality Meats, Inc.*, 610 F.2d 313, 316 (5th Cir. 1980).

We recognize that from at least 1999 through 2004, the Baal entities identified their principal place of business outside of Delaware as Lake Charles, Louisiana on their Delaware Franchise Tax Reports. *Id.* Exhs. 19-20. However, "principal place of business" for purposes of federal diversity, is a term of art. It is implausible that the "principal place of business" referenced in the Delaware (or Louisiana) franchise tax returns contemplated the federal jurisdictional definition. Moreover, the forms were completed by the Brewers' daughter who "really didn't know." (Depo., pgs. 15-18). In any event two months ago, the Baal entities amended their 2004 Delaware tax reports to indicate that their principal place of business was in Houston, Texas. (*See*, Def. Exh. 21).

In a similar vein, Baal Land stated in a 2004 petition filed in Montgomery, Texas, that it had "a principal place of business" in Harris County Texas. (Baal's Reply Memo., Exh. 3). Also, in the act of sale from Baal Land to Griffin Logging, Inc., Baal Land's "principal office" is stated to be in Houston. (Baals' Memo. in Opp. to MSJ, Exh. 3).[6] As with the aforementioned tax returns, we accord little weight to these undefined, conclusory statements.

Joshua emphasizes that the Baal entities obtained certification to conduct business in Louisiana, but not in Texas. (*See*, Depo., pg. 116; Def. Opp. Memo., Exh. 1). Yet, a "corporation's adherence to a particular state's regulatory requirements for conducting business within that state is not determinative." *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d

---

[6] Ronald Brewer signed the act of sale on behalf of Baal in Lake Charles, Louisiana upon his attorney's insistence. *Id.*; 30(b)(6) Depo. pg. 109.

873, 879 (5th Cir. 2004); *see also*, *Gautreau v. Central Gulf S. S. Corp.*, 255 F.Supp. 615, 616 (E. D. La. 1966)( a corporation's failure to qualify to do business in a state is not dispositive). Rather, whether a corporation is licensed to conduct business in a particular state is but one of several factors that must be considered when determining a corporation's principal place of business. *Id.*[7]

Indeed, the president of Baal Land and Baal Minerals stated that he did not think that he was required to do anything to conduct business in Texas. (Depo., pgs. 37-38). We also observe that from December 15, 2000, until April 5, 2005, Baal Land's certificate of authority to transact business in Louisiana was revoked. (*See*, Baal Land's Resp. to Req. for Prod. # 7).[8] Moreover, on the Detailed Record from the Louisiana Secretary of State, the Baal entities' principal office and mailing address is identified as Houston, Texas. (Baal's Reply Memo., Exhs. 5-6).[9]

In 2005 (and before), Ronald F. Brewer was the president of both Baal companies. (Depo., Exh. 3; Def. Opp. Memo., Exh. 33). His wife, Katherine G. Brewer, was vice-president. *Id.* The Brewers' son, Andrew M. Brewer, and daughter, Lacey E. Brewer,

---

[7] In *Village Fair Shopping Center v. Sam Broadhead Trust*, the Fifth Circuit concluded that the corporation's principal place of business was in New York, notwithstanding that there was no evidence that it was qualified to do business there. *Village Fair Shopping Center Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir.1979)

[8] The revocation was not suspended until after the instant suit was filed and removed. *Id.*

[9] Until 2004, the Baal companies' agents for service of process in Louisiana were Louisiana attorneys. (Depo., pgs. 13-14; 115-116). In 2004, Baals' president, Ronald Brewer became the agent for service of process. *Id.* Brewer's Louisiana residence was used for service of process because his secretary likely assumed that he had to have a Louisiana address to be a registered agent in this state. *Id.* at pgs. 22-25.

served as treasurer and secretary, respectively. *Id.* Evelyn Benoit Hardee served as corporate secretary. *Id.* Meetings were held annually. *Id.* Since 2000, the meetings have been held in Lake Charles, Louisiana. *Id.*[10] Prior to that, directors' meetings and resolutions were often held in, or emanated from Houston, Texas. *Id.*; Exhs. to Pl. Reply Memo.

Ronald and Katherine Brewer's home address is 2929 Buffalo Speedway, Houston, Texas. (Depo., pgs. 7-8). They have lived there since 1982. *Id.*[11] Andrew Brewer lives in Foley, Alabama. *Id.* at pg. 48. Lacey Brewer lives in Lake Charles, Louisiana, but no longer performs services for Baal Minerals. *Id.* at pgs. 48, 94. Evelyn Hardee lives in Lake Charles, Louisiana. *Id.* at pgs. 94-95.

Several individuals perform work for the Baal companies. Evelyn Hardee is a bookkeeper who does data input in Lake Charles. (Depo., pgs. 67-68). She is paid via the Mr. and Mrs. Ronald F. Brewer, Oil and Gas Account. *Id.* Hardee performs bookkeeping services for all of the Brewers' entities. *Id.*[12]

Bob Baggett is an in-house accountant that performs a wide array of services for the

---

[10] The annual meetings are now held in Lake Charles because it is convenient. (Depo., pg. 48).

[11] They also vote in Houston, Texas. (Ronald Brewer Affidavit; Pl. Reply Memo., Exh. B).

[12] The Brewers were apparently linked at one time to at least 18 companies. (*See*, February 15, 1999, Resignation by Claudia Leger; 30(b)(6) Depo., Exh. 3). A cursory review of court records reveals that the Brewers have consistently maintained that they are Texas domiciliaries and that the principal place of business for another company owned by them, Jardin Minerals Co., is in Texas. *Brewer, et al. v. Charleston Oil & Gas*; Civil Action Number 94-2267 (W.D. La. 1994); *Mideast Gas Systems, Inc. v. Brewer*; Civil Action Number 96-1015 (W.D. La. 1996). This consistency tends to ameliorate potential concerns that the Brewers might have sought to manipulate jurisdiction to suit their convenience.

Brewers not limited to the Baal companies. *Id.* at pg. 38. He is paid via the Mr. and Mrs. Ronald F. Brewer, Oil and Gas Account. *Id.* He lives in Louisiana, and works out of the Lake Charles office. *Id.* at pg. 74.[13]

Albert Blanchard is professional pilot and landman who performs work for all of the Brewers' companies. *Id.* at pgs. 72-73. He is paid via the Mr. and Mrs. Ronald F. Brewer, Oil and Gas Account. *Id.* He lives in Ragley, Louisiana. *Id.*[14]

Claudia Leger is a paralegal who is employed by the Brewers as a personal assistant. *Id.* at pgs. 30-31. She performs her work, and resides in Houston, Texas. *Id.*; Ronald Brewer Affidavit. She is paid out of the Mr. and Mrs. Ronald F. Brewer, Oil and Gas Account. *Id.*

Leger and Ron Brewer manage the majority of Baal Minerals' litigation out of the Houston office. (Ronald Brewer Affidavit; Pl. Reply Memo., Exh. B). The corporate office for both Baal entities has been in Houston, Texas since 1992. *Id.* All revenue checks are received and deposited in Houston, Texas. *Id.* The companies' accounting process begins in Houston, Texas with Claudia Leger. *Id.* All litigation documents are sent to Texas and stored in the *Time Matters* software program by Claudia Leger. *Id.* Discovery requests are answered out of the Houston office. *Id.*

The oil and gas companies that tend to drill and lease land owned by Baal are usually located in Houston, Texas. *Id.* Thus, negotiations between the oil and gas companies and

---

[13] Baal has a traditional office in Lake Charles, Louisiana. (Depo. pg. 88). However, Baals' main corporate office has been in Houston, Texas since 1992. (Ronald Brewer Affidavit; Pl. Reply Memo., Exh. B).

[14] Brenda Vidrine is a receptionist in the Lake Charles office. *Id.* at pg. 74.

9

Ron Brewer usually occur in Houston, Texas. *Id.* Since the Baal corporations were formed in 1992, all books and records have been kept in the companies' Houston office. *Id.* Ron Brewer is the custodian of the records. *Id.*

All decisions and strategic planning for the Baal corporations are primarily made out of the corporate office in Houston, Texas. *Id.* From 1992 through 2005, Baals' bank accounts have been maintained in Houston. *Id.* Ronald Brewer is the authorized signatory on the accounts. *Id.* All bank statements go to Houston. (Depo. pg. 80).

The Baal companies do not belong to any business group in Louisiana, Texas, or Delaware. *Id.* at pgs. 107, 133. The management of the remaining 1/9 interest of the 2600 acres owned by Baal Land is non-existent. *Id.* at pg. 124. Baal Land incurs brokerage and litigation expenses, but expenses are greatly reduced. *Id.* at pg. 122.[15] Baal Land's land operation is dormant. *Id.* at pg. 123-124.

As the foregoing summary of pertinent (and purportedly pertinent) facts illustrates, the Baal companies have significant ties to both Texas and Louisiana. What is determinative for our inquiry however, is the nature of those ties. It is manifest that these corporations are closely held and exclusively controlled by Ronald Brewer. His domicile is in Texas, and decision making and strategy primarily arise there. There is no evidence that any other personnel have discretion to make decisions. In fact, there are no direct, exclusive employees of Baal. The weight of the evidence supports the conclusion that Baals' nerve center or "brain" is in Texas.

Conversely, we find that Louisiana is the primary source of revenue for the Baal

---

[15] All litigation involving the Baal entities is in Louisiana. *Id.* at pg. 130.

companies.  Yet, the companies engage is very little overall activity.  It is manifest that the type of activity that the Baal entities engage in, -- purchasing, holding, leasing, and selling land and mineral interests is properly characterized as "passive."  *Muirfield (Delaware), L.P. v. Pitts, Inc.*  17 F.Supp.2d 600, 604-605 (W.D. La. 1998)(citing, *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir.1998) (holding that ownership of a golf and country club was passive); and *Village Fair Shopping Center Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir.1979) (holding that owning a shopping center was passive).  It is precisely these circumstances when  "the activity of a corporation is passive and the 'brain' of the corporation is in another state, [that] the situs of the corporation's 'brain' is given greater significance...." *Olsen*, 818 F.2d at 411 (citation omitted).

Applying these guideposts to all of the relevant facts, we find that the Baals' principal place of business is in Texas.  Thus, plaintiffs are deemed citizens of Texas for purposes of diversity, and complete diversity is lacking.  28 U.S.C. § 1332(c).  Remand is required.  28 U.S.C. § 1447(c)("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

For the foregoing reasons,

IT IS RECOMMENDED that plaintiffs' motion to remand [doc. # 33] be GRANTED.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 3rd day of February, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE